Taft, J.,
 

 dissenting. Section 1346-4, General Code, effective October 18, 1949, requires that the Administrator of the Bureau of Unemployment Compensation or his deputy ‘ ‘ shall promptly examine any application for determination of benefit rights filed, and on the basis of any facts found by him shall
 
 determine whether
 
 or not such application is
 
 valid
 
 and if valid
 
 the date on which the benefit year shall commence, the weekly benefits payable, and the maximum amount thereof
 

 “In making determinations
 
 on, applications and claims for benefits the administrator and his deputy shall
 
 follow decisions
 
 of the board of review which have become final with respect to claimants similarly situated.” (Emphasis added.)
 

 As indicated by the footnote,
 
 *
 
 the only changes made in this section on October 18, 1949, were formal ones having no effect on its meaning. During 1949, no other changes were made in the portions of this section herein quoted.
 

 The same section requires notice to all interested parties of the administrator’s decision allowing a claim and further provides:
 

 
 *491
 
 “Unless an appeal is filed from such, decision with the board of review within ten calendar days after such notification
 
 *
 
 * *
 
 such decision
 
 of the administrator or deputy
 
 shall be final and benefits
 
 shall be
 
 paid
 
 or denied
 
 in accordance therewith
 
 * * V’ (Emphasis added.)
 

 The same section provides that, upon appeal to the board of review, a referee of the board may decide the case and his decision “shall be deemed the final decision of the board” unless removed to the board within ten days after notification of decision; that, if removed to and decided by the board, the board shall notify all parties “of the board’s final decision and the reasons therefor”; and that decisions of the board may be appealed to the Common Pleas Court within 30 days after notification of decision. Further appeal is provided “as in ordinary civil cases.’’
 

 The function of the respondent under the above statute is essentially judicial or quasi-judicial.
 

 His decision, which is to become final, is, by the words of the statute, to include the following determinations :
 

 1. Whether the application is valid
 

 2. If it is then
 

 (a) the date on which the benefit year is to commence
 

 (b) the weekly benefits payable
 

 (c) the maximum amount thereof.
 

 These determinations are to be made “on the basis of any facts found by him. ’ ’
 

 He has fulfilled that function by determining the validity of many claims and the weekly and maximum benefits payable in respect thereof, and the time has gone by for filing an appeal, or the decisions in respect of those claims have otherwise become final under the provisions of Section 1346-4.
 

 Nevertheless, respondent proposes to reconsider
 
 *492
 
 those decisions and in part to decide those claims over again by again determining the weekly benefits payable and the maximum amount thereof.
 

 The General Assembly has not authorized the respondent to take any further judicial or quasi-judicial action with respect to those claims. On the contrary, it has expressly provided that the decisions heretofore made with regard to those claims ‘ ‘ shall be final. ’’
 

 It would appear obvious that respondent proposes to exercise judicial or quasi-judicial functions which he has no power or authority to exercise. In such an instance, a writ of prohibition may issue to prevent the exercise of such judicial or quasi-judicial functions.
 
 State, ex rel. Willys-Overland Co.,
 
 v.
 
 Clark et al., Indus. Comm.,
 
 112 Ohio St., 263, 147 N. E., 33; 32 Ohio Jurisprudence, 577, Section 16.
 

 However, respondent argues that relator has a complete and adequate remedy in the ordinary course of the unemployment compensation law and that, therefore, a writ of prohibition should not be issued; and the majority of this court has based its decision on that conclusion, without determining whether respondent has the power or authority which he proposes to exercise and which relator asks this court to prevent him from exercising.
 

 That the relator will reconsider his decisions which have become final and in part decide them over again is clearly alleged in the petition where it is said:
 

 “The respondent in his official capacity as aforesaid has advised the relator, and by public statements all others similarly situated, that he is proceeding to reconsider each and every such final determination and final decision of a valid claim for benefits with respect to which the benefit year so finally determined has not expired on or before August 22, 1949. * * *
 

 “The respondent in his official capacity as aforesaid
 
 *493
 
 lias further advised the relator, and by public statements all other employers similarly situated, that upon such reconsideration he will again decide each and every such claim for benefits and compute the weekly benefits payable and the maximum amount thereof so that after August 22,1949, the weekly benefits payable and the maximum amount of all benefits payable with respect to such claims heretofore so finally determined shall be paid in accordance with the amendment of Section 1345-8 of the General Code which became effective on August 22, 1949.
 

 ‘ ‘ If additional benefits' should be paid in respect of such claims, a large amount of public trust funds of the state of Ohio in the unemployment trust fund account maintained pursuant to Section 1345-2 of the General Code would be expended and wholly lost. On information and belief the relator says that the amount so involved would be not less than $12,000,000.00.”
 

 This case is now before this court on a demurrer to the petition. At this stage of the proceeding, this court cannot inquire into the truth of those allegations.
 

 The relator is an employer amenable to the unemployment compensation law and a contributor to the trust fund established by it. His rates of contribution are established initially by certain factors which have to do with his own employment experience. These factors are prescribed by Section 1345-4. In 1947 this section was amended so as to superimpose an additional factor in the determination of an employer’s rate, which additional factor is based upon the condition of the fund as a whole and not upon the employer’s individual experience. This section, Section 1345-4 (c) (4) (D) and (E), provides that if the aggregate amount of the whole fund rises or falls in relation to the average of the last three annual payrolls of all employers, or if the aggregate amount in the fund is less than the-
 
 *494
 
 total of all benefits paid out during the two preceding years, then the initial rate of each employer is modified by the percentages specified.
 

 Obviously, any illegal payment from the fund by the respondent will decrease the aggregate amount of the whole fund below what it would have been if such .illegal payment had not been made.
 

 If such an illegal payment is made on the claim of an employee, relator is given no right to complain unless he is an “interested party” within the meaning of the act. Section 1346-4, General Code. If, as will he the case with many of the claims which respondent proposes to redetermine, relator is neither the “most recent employer ’ ’ of the claimant nor an ‘ ‘ employer in ;such claimant’s base period,” then relator will not be •such an “interested party” so far as those claims are concerned. Section 1345-1
 
 g,
 
 General Code. Nevertheless, additional payments on those claims will necessarily have an adverse effect on the rate which relator will be required to pay by reason of the provisions of Section 1345-4 (e) (4) (D) and (E), General Code.
 

 Respondent argues that, under Section 1345-4 (c) (4) (G), General Code, relator may be heard with regard to and appeal from any determination and order of respondent “affecting” his “liability * * * to pay contributions or the amount of such contributions.” However, when such an order is made and discloses an increase in relator’s rate by reason of “the aggregate amount of the unemployment compensation fund” being less than it would have been if the illegal payments had not been made, of what can relator then complain? The statute, Section 1345-4 (c) (4) (D) and (E), General Code, will then require the increased rate by reason of “the aggregate amount of the unem
 
 *495
 
 ployment compensation fund ’ ’ in comparison with certain other figures.
 

 The case of
 
 Willys-Overland Motors, Inc.,
 
 v.
 
 Jones, Admr.,
 
 146 Ohio St., 388, 66 N. E. (2d), 115, relied upon by respondent, is not in point. The relator in that case was complaining of payments to claimants previously employed by it. It was an “interested party” under the definition in Section 1345-1$, General Code, and could assert such complaints under Section 1346-4, General Code. That case did, therefore, as this court pointed out, involve a situation where relator had an adequate remedy at law.
 

 Likewise, the ease of
 
 Copperweld Steel Co.
 
 v. Indus.
 
 Comm.,
 
 143 Ohio St., 591, 56 N. E. (2d), 154, relied upon by respondent, is not in-point. As stated in that ease by Williams, J., “it may be remarked in this connection that the facts alleged do not show? that the orders of the commission in allowing the claims for compensation were absolutely void but could be at the most merely what is denominated erroneous in judicial procedure. ’ ’
 

 In the instant case, since the administrator has no power or authority to redetermine the matters which he proposes to redetermine, his action in doing so would be “absolutely void” and not merely an erroneous exercise of a power or authority which he had.
 

 My conclusions, therefore, are:
 

 1. The determinations by the Administrator of the Bureau of Unemployment Compensation of the weekly benefits payable and the maximum amounts thereof in accordance with the provisions of Section 1345-4, General Code, involve an exercise by such administrator of judicial or quasi-judicial functions.
 

 2. After a decision making such determinations has become final pursuant to the provisions of that sec
 
 *496
 
 tion, such administrator has no power or authority to redetermine either such weekly benefits or such maximum amount.
 

 H.
 
 A writ of prohibition may issue to prevent an officer from exercising judicial or quasi-judicial functions which he is neither authorized nor empowered to exercise.
 

 4. Unauthorized payments from a fund will cause financial detriment to a party where the law provides that the rate of contributions of such party to the fund shall be increased if the aggregate amount in the fund is reduced.
 

 5. Such party has no adequate remedy at law to prevent such detriment, if he has no legal remedy to prevent an illegal payment which will reduce the aggregate amount in such fund.
 

 6. An employer has no adequate remedy to prevent an illegal payment of benefits to a claimant under the unemployment compensation law where such claimant was not his former employee.
 

 In my opinion, the demurrer should be overruled.
 

 Stewart, J., concurs in the foregoing dissenting-opinion.
 

 *
 

 Prior to October 18, 1949, this quoted portion of Section 1346-4, General Code, read as follows: “* * * shall promptly examine any claim filed,' and on the basis of any facts found by him shall
 
 determine whether
 
 or not the claim for benefits is
 
 valid
 
 and if valid
 
 the date on which the benefit year shall commence, the weekly benefits payable, and the maximum amount thereof. In making such determination
 
 the administrator and his deputy shall
 
 follow decisions
 
 of the board of review which have become final with respect to claimants similarly situated.” (Emphasis added.)-